**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

B.C., a child by and through her mother,
LEIGH ANN STONEFIELD,

       Plaintiffs,

v.

ORTEGA MIDDLE SCHOOL, and
ALAMOSA COUNTY SCHOOL DISTRICT, No. Re-11J

       Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

       B.C., a minor, by and through her mother, Leigh Ann Stonefield (collectively "Plaintiffs"), through their attorneys, Levin Jacobson Japha, P.C., for their Complaint, allege, on information and belief, as follows:

**PARTIES**

       1.     B.C. is, and at all relevant times was, a resident of the State of Colorado under 18 years of age.

       2.     Leigh Ann Stonefield is, and was at all relevant times, the mother of her minor daughter, BC, and a resident of the State of Colorado.

       3.     The Alamosa County School District, No. Re-11J ("School District") is, and was at all relevant times, a Colorado school district that receives federal funding.

       4.     The School District operates Ortega Middle School, which is located at 401 Victoria Avenue in Alamosa, Colorado.

1

5.      At all times relevant hereto, Robert Ajejo (Superintendent), Amy Ortega (Principal), Eric Palmer (Assistant Principal), Bill Brooks (Counselor), Bruce Lukow (Security Guard), Anthony Kechter (Teacher), Destiny Davis (Teacher), Wendi McClaren-Geis (Teacher), Tanya Znamenacek (Teacher), Kathy West (Teacher), Jacqueline Bell (Teacher), were employees of and/or acting as agents of OMS and/or School District.

## JURISDICTION AND VENUE

6.      All prior allegations are incorporated as if set forth fully herein.

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the complaint concerns a question under federal law, namely Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

8.      This Court has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise out of the same case and controversy as the federal cause of action.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events and conduct giving rise to the claims occurred in the District of Colorado.

10.      On or about May 7, 2019, prior to commencing this action, pursuant to § 24-10-109, C.R.S., Plaintiff timely filed a Notice of Claims via certified mail with Ortega Middle School and the Alamosa County School Board.

## GENERAL ALLEGATIONS

11.      Paragraphs 1 through 10 are incorporated as if set forth fully herein.

12.      B.C. attended Ortega Middle School ("OMS") from approximately August 2016 until January 2019.

13.     B.C. has cystic fibrosis ("CF"), diabetes, and a liver disease.

14.     B.C. attended OMS on a Section 504 plan pursuant to the Rehabilitation Act, 29 U.S.C. § 794.

15.     During the 2018-2019 school year, B.C. endured constant bullying and a physical assault.

16.     Both OMS and School Board (collectively "Defendants") were aware of B.C.'s disabilities and status as a qualified individual because B.C. was engaged in an Individualized Education Program ("IEP").

17.     In the fall of the 2018 school year, B.C. began complaining to school employees and Ms. Stonefield about bullying.

18.     On or about September 24, 2018, B.C. reported to Mr. Bill Brooks ("Mr. Brooks"), a school counselor, that she was threatened by a girl named K.A.

19.     On or about September 25, 2018, B.C. also informed Ms. Amy Ortega ("Ms. Ortega"), the school principal, that K.A. had threatened her.  Instead of taking proper action, Ms. Ortega simply stated she would talk to K.A.

20.     On or about September 26, 2018, Ms. Stonefield received a text from a student named H.P. with a credible threat against B.C.  H.P. reported to Mrs. Ortega that she had overheard K.A. and some other girls talking about "jumping [B.C.]" after school.

21.     Ms. Ortega said to H.P., "Don't worry about it."  Ms. Stonefield went to OMS after she received the text from H.P. and spoke with Ms. Ortega, who assured her that she "would take care of it."

22.     On or about September 27, 2018, Ms. Stonefield escorted B.C. to school and

wanted to speak to Ms. Ortega.  B.C. called Ms. Stonefield from an empty office that day, saying,

"Mom, they are going to hurt me."  Ms. Stonefield called the police because the school did not

do anything.

23.      Gravely concerned for her daughter, Ms. Stonefield went to the school. Security

guard Lukow ("Lukow") told Ms. Stonefield that Ms. Ortega was not available.

24.      Ms. Stonefield then spoke to Mr. Eric Palmer ("Mr. Palmer"), the school's

assistant principal, and told him about the bullying and harassment that B.C. was facing.  Mr.

Palmer offered verbal assurance to B.C. of safety but took no disciplinary action.

25.      On or about October 8, 2018, a meeting took place with Ms. Stonefield, Mr. Chris

Williams ("Mr. Williams," who is B.C.'s step-father), Ms. Ortega and Mr. Robert Alejo ("Mr.

Alejo"), the superintendent of School District, at which time B.C. and Ms. Stonefield relayed

continuing bullying and harassment to School District officials.

26.      The school did nothing to prevent the physical assault.

27.      On or about October 18, 2018: Ms. Stonefield informed Ms. Ortega, Ms. Alejo

and Mr. Brooks via email of continued bullying and harassment by various girls, who referred to

B.C. as a "slut" and "ho."

28.      Ms. Ortega learned of the email and took no effective disciplinary action, thereby

acting with deliberate indifference in allowing the bullying to continue.

29.      On or about October 17, 2018, B.C. tried to relay more threats to school officials.

Ms. Ortega refused to hear them.

30.      Another meeting took place on or about October 23, 2018 among B.C., Ms.

Stonefield, Ms. Ortega, and Ms. Palmer.

31.     At that time, more threats against B.C. were relayed to School District officials, and they were informed that any measures that they previously had taken were ineffective.

32.     One week later, Ms. Ortega threatened B.C. with legal action *despite the fact* that B.C. was the victim.

33.     On or about November 1, 2018, B.C. reported additional bullying and harassment to Mr. Brooks.   He simply said, "Don't worry about them; they are just middle school girls."

34.     Then, on or about November 6, 2018, B.C. was physically assaulted in the hallway when a boy kicked her in her broken leg.

35.     Police again were called to the school.  Ms. Ortega, who instead of properly dealing with the *repeated* bullying and harassment that B.C. was experiencing, allowing a child with cystic fibrosis and a broken leg being kicked in that broken leg, threatened Ms. Stonefield.

36.     Ms. Ortega wrote to Ms. Stonefield: "Several times now, including today, you have entered the OMS hallways while students are present without permission. I would like to make it clear that you are not to be in the hallways unless you have been given permission to do so and we are aware of where you are headed. In the future, our initial meetings on any issues will take place in the OMS foyer or at the admin building."

37.     Ms. Stonefield had *never* presented any physical or emotional danger to *anyone* at OMS. Ms. Ortega's actions against Ms. Stonefield were really against B.C., as they were designed to prevent Ms. Stonefield from advocating on behalf of her disabled daughter.

38.     It was later learned that the punishment against the male who kicked B.C. was extremely mild relative to the severity of what he had done.

39.     On or about November 14, 2018, Ms. Stonefield made School District officials

aware that B.C. continued to be bullied and harassed.

      40.     S.C., K.A., A.I. and S.D., OMS students, verbally assaulted B.C. during lunch recess, shouting at B.C. and making further threats related to B.C.'s fractured leg.

      41.     The next day, Ms. Stonefield emailed Ms. Ortega regarding continued bullying and harassment against B.C., to the point that B.C. was sobbing.

      42.     D.T. verbally attacked B.C. during class and was screaming at her across the classroom.  The teacher had difficulty removing him from the class.

      43.     B.C. was so distraught at one point that she could not finish her Spanish test, which is a denial of her education.

      44.     B.C. further has been denied her education because she has missed assignments and parts of classes due to bullying.

      45.     During a meeting on this day, Ms. Ortega informed B.C. that she was to stay in a designated area for lunch, which was patently discriminatory, as it excluded B.C. from her usual activities instead of keeping B.C.'s bullies away from her.

      46.     Instead of properly dealing with the situation, Ms. Ortega told Ms. Stonefield: "You're not going to come in here and tell us how to run our school."

      47.     OMS also suggested that B.C. leave class early to avoid her tormentors, which is facially discriminatory, denying B.C. and education instead of requiring the victimizers to leave class early.

      48.     On or about November 27 and 28, 2018, Ms. Stonefield emailed Mrs. Ortega regarding continued bullying and harassment against B.C.

      49.     Mrs. Ortega responded to the email requesting dates and witnesses of the "Stay

Away Order" violations.  This information was provided to Mrs. Ortega including specific dates, and witnesses to the events.

50.     On or about December 12, 2018, Ms. Stonefield again emailed Mrs. Ortega regarding continued bullying and harassment against B.C.

51.     As B.C. exited the school, S.C. and her younger sister pointed at B.C. and made threatening comments about her leg injury yet again.

52.     B.C. was so upset that she was crying.

53.     The continued bullying has created a hostile environment not conducive for learning.

54.     On or about December 17, 2018, Ms. Stonefield sent an email to all of B.C.'s teachers informing them that because of the dangerous environment at the school, B.C. would have to complete the rest of the semester at home.

55.     Teachers supplied homework and test make-up that were completed prior to Christmas break.

56.     B.C. was enrolled at Sangre De Cristo Middle School immediately following Christmas break.

57.     Due to B.C.'s chronic illness and increased risk of depression and anxiety, she is especially vulnerable to psychological distress that can, and has, impacted her current health and functioning.

58.     B.C.'s treating physicians have noted their concern about the significant negative impact of ongoing psychological and social stressors that B.C. experienced as a result of negative peer interactions and bullying.

59.     B.C. completed mental health screening and assessment, the results of which indicated heightened psychological symptoms consistent with an acute stress response.

60.     B.C. was forced to have to change schools because of the harassment that went unabated by Defendants, resulted in more emotional trauma and stress related to a loss of social contacts, and a loss of opportunity for sports recognition and exposure as a result of moving from a 3A school to a 1A school.

61.     Additionally, Sangre De Cristo Middle School was further away from B.C.'s home, resulting in an increased burden for her to complete required medical treatments prior to school, increased travel time, and increased financial burden related to a further travel distance.

62.     At all times, the bullying against B.C. took place on the premises of OMS by students under the supervision and control of Defendants.

63.     Despite repeated notice of bullying and harassment, Defendants failed to take appropriate action to investigate, discipline, prevent, or correct the bullying and harassment.

64.     Defendants' failures to investigate and take proper remedial action contributed to a tolerance for bullying at OMS.

65.     If a student with a disability is being bullied, it is a school's responsibility to take immediate action to investigate the issue and take steps to stop the bullying and prevent it from recurring.  Defendants failed to do so.

66.     B.C. is now 15 years old and upon information and belief is attending a different school than OMS.

67.     B.C. suffered physical damage, as well as severe emotional and psychological damage as a result of the bullying she experienced at OMS, which damage cannot be remedied through prospective, administrative procedures.

8

**FIRST CLAIM FOR RELIEF**
**Violation of Section 504 of the Rehabilitation Act**
**(Against Defendant Ortega Middle School)**

68.     Paragraphs 1 through 67 are incorporated as if set forth fully herein.

69.     Section 504 of the Rehabilitation Act states, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."  29 U.S.C. § 794(a).

70.     B.C. is an individual with a disability as defined by Section 504 of the Rehabilitation Act because she has cystic fibrosis, which substantially limits one or more major life activity.

71.     Defendant OMS provides educational service to the public and, on information and belief, is a program receiving federal financial assistance.

72.     OMS has a duty to provide free and appropriate education to its students, including B.C.

73.     B.C. was denied benefits and was subjected to discrimination at OMS because of her disability.

74.     OMS failed to protect B.C. from the repeated and frequent bullying on the school's premises on the basis of her disability, and failed to provide a safe educational environment for B.C.

75.     The harassment and bullying was so severe and pervasive that it adversely and significantly affected B.C.'s education, resulting in severe emotional and psychological harm to B.C.

76.     Defendant OMS is therefore liable to Defendants for compensatory damages, as well reasonable attorneys' fees, litigation expenses, and costs, as allowed by law and statute.

**SECOND CLAIM FOR RELIEF**
**Negligence**
**(Against School District and OMS)**

77.     Paragraphs 1 through 76 are incorporated as if set forth fully herein.

78.     School District had a duty to comply with Section 504 of the Rehabilitation Act in implementing its regulations, to provide B.C. with a safe environment to attend public school and to provide B.C. with an education in an environment that was free of bullying and harassment.

79.     The United States Department of Education requires schools to address harassment incidents that it knows or reasonably should have known about.

80.     In September of 2018, Defendants first became aware of B.C.'s complaints about bullying and harassment.

81.     Throughout the remainder of the fall semester, Plaintiffs repeatedly complained about harassment and threatening behavior directed at B.C. because of her disability.

82.     Despite the complaints, said harassment and threatening behavior continued, including physical and emotional harm to B.C.

83.     OMS personnel had a duty to promptly investigate Plaintiffs' complaints and take appropriate remedial action, as necessary.

84.     Defendants breached their duties to B.C. by failing to properly supervise its students and employees.

85.     Defendants breached their duties to B.C. by failing to remedy Plaintiffs'

complaints over the course of several months.

86.     Defendants' omissions were willful and wanton in the face of the actual knowledge they had about physical and emotional harm to B.C., allowing B.C. to be placed in an unsafe environment by failing to take proper septs to prevent or remediate bullying and harassment.

87.     Because of Defendants' conduct and the lack thereof, B.C. has suffered from severe emotional and psychological harm.

88.     Because of Defendants' conduct and the lack thereof, Plaintiffs are entitled to damages.

### THIRD CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress
### (Against Defendant OMS)

89.     Paragraphs 1 through 88 are incorporated as if set forth fully herein.

90.     B.C. experienced harmful bullying from September through December of 2018.

91.     The continuation of bullying was, on information and belief, a direct result of OMS's failure to properly address the bullying and harassment of B.C. by her fellow students.

92.     Because of the bullying, B.C. suffered severe emotional distress and psychological damage.

93.     Defendant OMS, through its employees and agents, knew or should have known that its failure to prevent remediate bullying of B.C. would cause emotional and psychological damage to B.C.

94.     OMS, through its actions or the lack thereof, created an unreasonable risk to B.C.'s emotional and psychological health.

95.     Defendant OMS, through its actions or the lack thereof, was deliberately indifferent to the safety and health of B.C., which conduct or the lack thereof was objectively extreme and outrageous.

96.     B.C. was placed in and fear for her own safety and wellbeing because OMS would not take remedial action to address the bullying and harassment.

97.     Because of Defendants' conduct and the lack thereof, B.C. has suffered from severe emotional and psychological harm.

98.     Because of Defendants' conduct and the lack thereof, Plaintiffs are entitled to damages.

### FOURTH CLAIM FOR RELIEF
### Violation of Colo. Const. Art. 9, §2

99.     Paragraphs 1 through 98 are incorporated as if set forth fully herein.

100.    B.C., as a resident of Colorado, is entitled to a public education.

101.    At all times relevant hereto, B.C. was a child eligible for a public education pursuant to Colo. Const. Art. 9, § 2.

102.    Defendants denied B.C. her right to a constitutionally mandated education by discriminating against B.C. because of her disability, and by not addressing B.C.'s disability by failing to design, implement, and properly maintain a Section 504 Plan.

103.    Defendants further denied B.C. her right to a constitutionally mandated education by isolating B.C. from her classmates because of her disability.

104.    Defendants caused Plaintiffs damages as a result of their constitutional violation, entitled Plaintiffs to damages.

**FIFTH CLAIM FOR RELIEF**
**Negligent Training and Supervision**
**(Against OMS and School District)**

105.    Paragraphs 1 through 104 are incorporated as if set forth fully herein.

106.    School District and OMS had a duty to train and supervise competent administrators, teachers, and employees to comply with the Rehabilitation Act and provide students with a safe, healthy learning environment free of discrimination and harassment.

107.    School District and OMS also had a duty to train and supervise competent administrators, teachers, and employees to remedy reports of discrimination and harassment.

108.    The continuation of bullying was, on information and belief, a direct result of OMS's failure to properly address the bullying and harassment of B.C. by her fellow students.

109.    Defendants breached their duties to B.C. by failing to properly supervise and train its employees.

110.    Had Defendants properly trained employees, upon information and belief, Defendants would have remedies the discrimination and harassment complained of by Plaintiffs.

111.    Defendants failed to remedy Plaintiffs' complaints over the course of several months.

112.    Because of Defendants' failure to train its employees to comply with the requirements of the Rehabilitation Act, B.C. has suffered from severe emotional and psychological harm.

113.    Because of Defendants' conduct and the lack thereof, Plaintiffs are entitled to damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter an order of judgment in their favor and against Defendants as follows:

A.  An award of economic damages, including but not limited to an amount of money damages that will fully and fairly compensate Plaintiffs for the injuries, damages, and losses alleged herein;

B.  Prejudgment interest as allowed by law;

C.  Attorney fees as may be allowed by law;

D.  Non-economic damages in an amount to be proven at trial;

E.  Punitive damages as may be allowed by law; and

F.  Such other relief as the Court deems just and appropriate.

Plaintiffs respectfully request a trial by jury.

Respectfully submitted this 25th day of September, 2020.

LEVIN JACOBSON JAPHA, P.C.

*s/ Evan J. House*
David C. Japha, Esq.
Evan J. House, Esq.
Levin Jacobson Japha, P.C.
950 South Cherry Street, Ste. 912
Denver, Colorado 80246
Telephone:  (303) 504-4242
Fax:  (303) 691-9719
davidjapha@japhalaw.com
ehouse@ljjlaw.com
ejhouse.esq@gmail.com (CM/ECF)
*Attorneys for Plaintiffs*

Plaintiffs' Address:
c/o Levin Jacobson Japha, P.C.
950 South Cherry Street, Suite 912
Denver, Colorado 80246
(303) 504-4242